IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.C. TAYLOR ANTIQUE AUTOMOBILE AGENCY, INC., *Plaintiff*, | : : : : | CIVIL ACTION |
| v. | : : | |
| HEWLETT-PACKARD COMPANY, *Defendant*. | : : | No. 14-3006 |

## MEMORANDUM & ORDER
## DENYING MOTION TO DISMISS & SETTING SCHEDULE

**AND NOW**, this 22nd day of July, 2014, upon consideration of Hewlett-Packard Company's ("HP") Motion to Dismiss (Docket No. 5), J.C. Taylor Antique Automobile Agency, Inc.'s ("J.C. Taylor") Brief in Opposition (Docket No. 11), and HP's Reply (Docket No. 13), **the Court hereby ORDERS that the Motion is DENIED AS PREMATURE for the following reasons:**

HP argues that J.C. Taylor's unjust enrichment claim should be dismissed with prejudice because both parties agree that the nature of their relationship is contractual and Pennsylvania law prohibits unjust enrichment claims "when the relationship between the parties is founded on a written agreement or express contract." Mot. Dismiss 4 (quoting *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169-70 (3d Cir. 2014)). Although "pleading both breach of contract and unjust enrichment is plausible only when the validity [or existence] of the contract itself is actually disputed," *Grudkowski*, 556 F. App'x at 170 n.8 (citing *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012)), the terms of the contract in question must actually govern the rights or conduct at issue. *Cf., e.g.*, *Montanez*, 876 F. Supp. 2d at 516

(dismissing an unjust enrichment claim where "there is no dispute that plaintiffs and HSBC Mortgage entered into a binding *contract that governed the terms of the mortgage*" from which the dispute arose (emphasis added)). The existence of *a* contract governing *a* particular relationship between two parties does not necessarily mean that *such* contract would govern every issue on which one of those parties might seek relief from the other.

HP's apparent categorical position here, namely, that the existence of any contract between two parties forecloses any unjust enrichment claim, is not, and cannot be, the law. Uncertainty remains regarding the scope of the alleged contractual relationship between HP and J.C. Taylor because the terms of the parties' putatively extant contract(s) have not been established. In fact, J.C. Taylor claims that it cannot "identify a complete, final set of the Purchase Documents referenced in the Master Lease among the various iterations of communications exchanged between JC Taylor and HP in connection with JC Taylor's lease of the System." Br. Opp. 5. For this reason, presumably, HP has withdrawn its Motion to Dismiss with respect to J.C. Taylor's breach of contract claim.

The ramifications of the absence of the contract(s), however, are broader than HP acknowledges, and, in fact, prevent the Court not only from determining whether J.C. Taylor may properly plead unjust enrichment in the alternative to breach of contract, but also whether J.C. Taylor may pursue breach of warranty claims based on the alleged but missing contract(s). Under such circumstances, the Court will not engage in what would be nothing more than the meaningless exercise of evaluating whether extracontractual statements constitute warranties and whether, if so, such warranties were disclaimed.

The absence of the rumored contract(s) also has ramifications for J.C. Taylor's tort claims (fraudulent concealment and intentional nondisclosure, negligent misrepresentation, and

2

negligence), which HP argues the Court should dismiss under the "gist of the action" and "economic loss" doctrines. The Court likewise finds dismissal on either of these grounds premature. As this Court has explained before, district courts in the Third Circuit

> have interpreted the [gist of the action] doctrine "to call for a fact-intensive judgment as to the true nature of a claim," *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 385 (3d Cir. 2004), and concluded that the . . . doctrine may apply to bar both claims related to fraudulent performance and claims related to fraudulent inducement where the false representation concerned duties later enshrined in the contract. "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, No. 06-3959, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006).

*Bengal Converting Servs., Inc. v. Dual Printing, Inc.*, No. 11-6375, 2012 WL 831965, at *3 (E.D. Pa. Mar. 13, 2012) (some citations omitted).

The question here thus becomes whether HP allegedly fraudulently induced J.C. Taylor to enter into the contract(s) by making false representations about the duties that it was undertaking in the contract(s). If HP's purportedly fraudulent "statements were merely articulations of its duties in the parties' contractual relationship," then "they do not demonstrate a relationship collateral to the contract as required to survive the gist of the action doctrine." *Irish Isle Provision Co., Inc. v. Polar Leasing Co., Inc.*, No. 12-0778, 2013 WL 6077362, at *6 (M.D. Pa. Nov. 19, 2013). But if, on the other hand, the alleged "fraud [in the inducement] did not concern the performance of contractual duties, then the gist of the action would be the fraud, rather than any contractual relationship between the parties," *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. Ct. 2005), and the claims would not be barred by the economic loss doctrine, either, *e.g.*, *Howe v. LC Philly, LLC*, No. 10-5495, 2011 WL 1465446, at *6 (E.D. Pa. Apr. 15, 2011) ("Since the fraud in the inducement exception to the gist of the action doctrine . . . is equally applicable to the economic loss doctrine, the outcome is the same.").

3

The Court recognizes that, as apparent from the complete set of allegations in the Complaint, J.C. Taylor's tort claims may likely be barred by the gist of the action doctrine. As another court in the Eastern District of Pennsylvania has explained:

> [I]t is clear that [the fraud claim] is essentially a restatement of the breach of contract claim. The bottom line in this case is that [the plaintiff] signed an agreement with [the defendant] to buy software that worked, and the software (allegedly) did not work. The duties that plaintiff alleges defendant breached were created by and grounded in the licensing agreement. The fraud claim turns on the sufficiency of defendant's performance under the terms of the licensing agreement, and whether, in the context of that agreement, [the defendant] strung [the plaintiff] along with further promises based on the agreement. The fraud claim merely alleges that [the defendant] kept promising [the plaintiff] that the software would work and that [the defendant] would fulfill its end of the bargain under the agreement. Thus, "[t]he only difference between the tort and the contract claims is temporal, not substantive." *Haymond v. Lundy*, 2000 WL 804432 at 8, Nos. 99-5015, 99-5048 [(E.D. Pa. June 22, 2000)]. The agreement is far from collateral to the fraud claim; rather, I conclude that the agreement is at the heart of plaintiff's ongoing fraud claim, and therefore the gist of plaintiff's fraud action is unmistakably contractual, not tortious. While I acknowledge that caution should be exercised in determining the gist of an action at the motion to dismiss stage, see *Grode v. Mutual Fire Ins. Co.*, 623 A.2d 933, 936-37 ([Pa. Commw. Ct.] 1993), I conclude, based on the foregoing, that plaintiff's fraud claim merely duplicates its breach of contract claim and must be dismissed.

*Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833-34 (E.D. Pa. 2000) (footnotes omitted).

But it should likewise be apparent to HP that reaching such a result without reference to the contractual documents in question not only risks refusing to draw all reasonable inferences in J.C. Taylor's favor, but also squanders judicial resources by requiring the Court to play logic games to match all the possible contract- and fraud (or tort)-based scenarios to determine whether any fraud (or tort)-based claim might survive. And, moreover, in recognizing J.C. Taylor's breach of contract claim (though, of course, not conceding it), HP has effectively waived any objection to producing the contract(s). There is no reason the parties and the Court should not have the benefit of those documents in adjudicating J.C. Taylor's other claims.

Likewise, if HP and J.C. Taylor's contract(s) provided that HP's equipment would perform properly (seemingly, the basis of J.C. Taylor's fraudulent inducement and negligent misrepresentation claims), then J.C. Taylor's remedy lies in contract. And, similarly, although the "terms of the contract" remain unknown, J.C. Taylor's negligence claim may be barred because "[e]ach duty the Plaintiff alleges the Defendant breached . . . was established by the very terms of the contract agreement itself." *Irish Isle Provision Co.*, 2013 WL 6077362, at *3.

The Court further recognizes that the similar principles animating the economic loss doctrine may also pose an impenetrable defense to J.C. Taylor's tort claims.

> The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). The Supreme Court adopted the doctrine in an admiralty products liability case, holding that "a manufacturer in a commercial context has no duty under either negligence or strict-liability theory to prevent a product from injuring itself." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986). Though it recognized the need for products liability law to protect consumers from dangerous products, the Court expressed concern that if products liability remedies "were to progress too far, contract law would drown in a sea of tort." *Id.* at 866.
>
> Drawing a distinction between tort and contract law, the Court observed that the need for a remedy in tort is reduced when the only injury is to the product itself and "the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" *Id.* at 872. The Court explained that in such a situation express and implied warranties under contract law are best suited to compensate for a loss in product value. Not only would allowing an action to lie in tort impose substantial costs on society, but relying on contract law permits parties to negotiate the terms of the manufacturer's liability. *See id.* at 872-73. In exchange for allowing the manufacturer to restrict its liability, the purchaser can bargain for a lower price. *Id.* at 873. Accordingly, the Court saw "no reason to intrude into the parties' allocation of the risk." *Id.*

*Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002); *see also, e.g.*, *Melhorn Sales, Serv. & Trucking Co., Inc. v. Rieskamp Equip. Co.*, No. 08-2424, 2010 WL 1049434, at *5 (E.D. Pa. Mar. 18, 2010). *Cf. also generally, e.g.*, *Caudill*, 123 F. Supp. 2d at 830-33 (discussing damage disclaimers in the context of breach of contract, breach or warranty, and fraud claims).

5

Here, from the Complaint, it seems more than likely that J.C. Taylor's claims are premised on the failure of H.P.'s product, or "injury . . . to the product itself." *Werwinski*, 286 F.3d at 671. After all, the only dollar figure for damages appears to be the $2.5 million that J.C. Taylor paid out in return for, it alleges, not much at all—"a wholly unreliable data protection System plagued with chronic data corruption and data loss and unavailability problems." Compl. ¶ 68. It is impossible to tell, even construing J.C. Taylor's Complaint in its favor, whether the allegation that "JC Taylor cannot definitively determine, to this day, whether the chronic data loss, data unavailability and data corruption issues it has experienced with [HP's] XP24000 units have been fully resolved," Compl. ¶ 40, refers solely to the failure of HP's "System . . . to afford reliable data protection or site disaster redundancy protection to JC Taylor," Compl. ¶ 39—i.e., loss of data stored only on HP's System—or whether it refers to J.C. Taylor's total loss of data—i.e., such that the data is no longer available anywhere. And, similarly, whether HP disclaimed consequential damages in the contract(s) (e.g., for J.C. Taylor's perceived need to "implement[] its own extraordinary measures, at its own substantial cost," Compl. ¶ 37) is also yet unknown. Again, the Court will not attempt to delve into a fact-intensive inquiry without the very document on which the inquiry depends.

Thus, if HP's arguments are ultimately correct, then HP will have pursued a gambit costing the early dismissal of J.C. Taylor's unjust enrichment and tort claims. Pleading in the alternative is the theory that *either* of two theories will prevail, not *neither*. Yet HP has appeared to argue that J.C. Taylor's unjust enrichment claims cannot survive because the parties have a contract, while simultaneously attempting to obscure that contract by pointing to lease agreements to which it was not a party and declining to produce the contract(s) in question. HP then asks the Court to dismiss the tort claims because, as HP puts it, "the 'gist' of [J.C. Taylor's]

tort claims is that the quality of the products it acquired from HP was not what [it] contracted for." Mot. Dismiss 10. That argument, of course, butts heads with J.C. Taylor's breach of warranty claims. The louder HP's insistence grows that J.C. Taylor's noncontractual claims must be dismissed, the more questionable becomes HP's decision not to attach the contract(s) to its Motion to Dismiss. The Court declines to engage in adjudication by speculation.

**For these reasons, HP's Motion to Dismiss (Docket No. 5) is DENIED.**

**The Court FURTHER ORDERS that the case shall proceed on the following schedule, which promotes the rapid production of the contractual documents and, therefore, resolution of HP's arguments for early dismissal of J.C. Taylor's claims:**

### CASE SCHEDULE

#### Pleadings

1. **By no later than August 4, 2014**, HP shall produce any contract(s) between it and J.C. Taylor that are relevant to the parties' dispute.

2. **Within twenty-one (21) days of HP's production of any contract(s)**, J.C. Taylor shall submit an Amended Complaint based on the proper contracts and a reexamination of the case law and its application to the facts of and controlling documents in this case.[1]

3. **Within fourteen (14) days of J.C. Taylor's submission of its Amended Complaint**, HP shall either answer J.C. Taylor's Amended Complaint or renew its Motion to Dismiss, provided that—

---

[1] The Court expects not only that the Amended Complaint focus on the controlling contract(s) and their language, but also that J.C. Taylor pare the Complaint to remove any claims that are barred by the existence of a valid contract between the parties. (The Court reads HP as admitting that valid contract(s) bind the parties. *See* Mot. Dismiss 4-5.)

    a.   The instant denial of HP's Motion shall not require HP to answer J.C. Taylor's current Complaint, *see* Fed. R. Civ. P. 12(a)(4), *but*

    b.   If HP files a Renewed Motion to Dismiss, it shall answer any portions of J.C. Taylor's Amended Complaint that it no longer challenges.

**The deadlines set out below will be reevaluated in light of the parties' responses to the directives above:**

### Fact Discovery[2]

4.    **Discovery on all counts of the current Complaint** shall proceed promptly and continue in such manner as will assure that all requests for, and responses to, discovery will be served, noticed, and completed by **December 19, 2014**.

5.    Any party expecting to offer opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701 with respect to the issues of liability and damages shall, at the time required for submission of information and/or reports for expert witnesses on liability and/or damages, as appropriate, serve opposing parties with details and/or documents covering the lay opinions of the Rule 701 witnesses.

### Expert Discovery and *Daubert* Motions

6.    On or before **February 6, 2015, J.C. Taylor** shall identify and submit curriculum vitae for all expert witnesses on liability and/or damages who have not yet been identified and shall serve HP with reports and/or responses to expert witness discovery for each expert witness.

---

[2] Should *both* parties wish to extend any *discovery* deadlines (fact and/or expert) *without extending any other deadlines* set forth in this Scheduling Order, the parties may agree to do so without seeking leave of the Court.

7. On or before **March 6, 2015, HP** shall identify and submit curriculum vitae for all expert witnesses on liability and damages who have not yet been identified and shall serve J.C. Taylor with reports and/or responses to expert witness discovery for all such expert witnesses.

8. Discovery depositions, if any, of expert witnesses may be taken on or before **April 3, 2015**.

9. Any *Daubert* motion shall be filed on or before **April 24, 2015**. Responses to any such motions shall be filed and served within twenty-one (21) days after service of the motion.

**Summary Judgment Motions**

10. Any motion for summary judgment shall be filed and served on or before **May 15, 2015**. Responses to any such motions shall be filed and served within twenty-one (21) days after service of the motion.

All counsel and unrepresented parties are directed to review the Court's General Pretrial and Trial Policies and Procedures on the Court's website[3] in order to be familiar with the Court's requirements with respect to summary judgment motions. To that end, the Court reminds the parties that, in both their submissions and responses, controlling legal opinions rendered by the United States Supreme Court and the Court of Appeals for the Third Circuit *shall be cited to and discussed*, whenever possible, to defend arguments in support of and/or in opposition to the motion.

Two copies of any such motions and responses shall be served on the Court (Chambers[4]), and one copy on each opposing counsel, when the originals are filed.

---

[3] *Available at* http://www.paed.uscourts.gov/documents/procedures/prapol2.pdf.

[4] Room 10613, United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

9

**Final Pretrial Conference, Preparations and Required Submissions, and Trial Pool**

11. All **trial exhibits** shall be marked and exchanged on or before **June 5, 2015**.

12. All parties are to prepare and file with the Clerk of Court their **Pretrial Memoranda**, in accordance with this Order and Local Rule of Civil Procedure 16.1(c) as follows:

   a. **J.C. Taylor:** on or before **June 12, 2015**.

   b. **HP:** on or before **June 19, 2015**.

One (1) copy of each Pretrial Memorandum shall be served on the Court (Chambers), and one copy on each opposing counsel, when the original is filed.

13. Any party having an objection to: (a) the admissibility of any exhibit based on authenticity; (b) the admissibility for any reason (except relevancy) of any evidence expected to be offered; or (c) the admissibility of any opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701, shall set forth separately each such objection in their Pretrial Memorandum. Each objection shall describe with particularity the ground and the authority for the objection.

14. A final pretrial conference will be held with the Honorable Gene E.K. Pratter on **June 26, 2015, at 11:00 AM**, in Chambers. Lead trial counsel is required to appear at the conference. If trial counsel is on trial in another matter, an attorney in his or her office who is thoroughly familiar with this case is required to appear at the conference.

15. The parties shall meet to prepare a complete and comprehensive **Stipulation of Uncontested Facts** pursuant to Local Rule of Civil Procedure 16.1 (d)(2)(b)(2). Two (2) copies of such Stipulation shall be submitted to the Court (Chambers) seven (7) days after the final pretrial conference. The original shall be filed with the Clerk of the Court.

16. Unless otherwise ordered, **seven (7) days after the final pretrial conference**, each party shall submit to the Court (Chambers)—

    a. Two (2) copies of (a) proposed jury voir dire questions, (b) proposed jury instructions with *pinpoint* citations of authority for each point (ONE POINT PER PAGE), (c) proposed jury interrogatories, (d) motions in limine (excepting *Daubert* motions), and (e) a trial memorandum on the legal issues involved in the case. The originals shall be filed with the Clerk of the Court and a copy served on each opponent's counsel.

    If a model jury instruction taken, for instance, from the Third Circuit Model Instructions, O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, or Sand, *Modern Federal Jury Instructions* is submitted, state whether the proposed jury instruction is unchanged or modified. If a party modifies a model jury instruction, the modification shall be set forth with additions underlined and deletions placed in brackets.

    b. A short, written Joint Statement of the Case for reading to the jury at the commencement of the trial which shall cover (a) a brief statement of the facts; (b) a brief statement of cause(s) of action *and the essential elements of each cause of action*; and, (c) a brief statement of the defense(s) *and the essential elements of each affirmative defense*. The Joint Statement of the Case should not exceed two (2) pages in length.

    c. The Stipulation of Uncontested Facts detailed in paragraph 15.

17.     The case will be placed on the Court's **trial pool list on June 30, 2015**.[5] The case will be tried to a jury.

---

[5] The trial pool date is not a date certain, but rather notice that the matter is ripe for trial. The setting of a trial date certain will be discussed at the final pretrial conference.

**Other Trial Preparations**

18. If any party desires an offer of proof as to any witness or exhibit, that party shall informally inquire of opposing counsel or unrepresented party prior to trial for such information. If the inquiring party is dissatisfied with any offer provided, such party shall file a motion seeking relief from the Court prior to trial.

19. Because a witness may be unavailable at the time of trial as defined in Federal Rule of Civil Procedure 32(a)(3), the Court expects use of oral or videotape depositions at trial of any witness whose testimony a party believes essential to the presentation of that party's case, whether that witness is a party, a non-party or an expert. The unavailability of any such witness will not be a ground to delay the commencement or progress of an ongoing trial. In the event a deposition is to be offered, the offering party shall file with the Court, prior to the commencement of the trial, a copy of the deposition transcript, but only after all efforts have been made to resolve objections with other counsel. Unresolved objections shall be noted in the margin of the deposition page(s) where a Court ruling is necessary and a covering list of such objections is also required.

20. At least three (3) days before the trial date certain, counsel are to supply the Court with two (2) copies of each exhibit, and three (3) copies of a schedule of exhibits which briefly describes each exhibit.

**General Expectations**

21. All counsel and unrepresented parties are expected to review the Court's General Policies and Procedures and Guidelines for Trial and Other Proceedings in the Courtroom available on the Court's website at [www.paed.uscourts.gov](www.paed.uscourts.gov) concerning the conduct of the litigation, including trial. Any party desiring a hard copy of this document may call the Court's Civil Deputy, Ms. Rose A. Barber, at 267-299-7350, to request a copy. These Policies and

Procedures address many issues that frequently arise during the pendency of cases, and all counsel and unrepresented parties are expected to follow those procedures in spirit and in fact.

22. All counsel shall take such steps and undertake such procedures and processes so as to assure their use of the electronic docketing and document availability and retrieval systems operated by the Eastern District of Pennsylvania available from the Court.

23. EXTENSIONS OF TIME: Any necessary application for extension of any time deadlines, change in conference(s), or trial date(s) set forth in this Order shall be made in writing and submitted to the Court no later than three (3) days prior to the date sought to be changed or extended. Any such request shall include a factual verification of counsel or unrepresented party or witness showing good cause for the request, shall contain a statement of the position of all other parties as to the request, and, if the request relates to a discovery deadline, shall recount what discovery the parties have thus far accomplished.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge